[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 8262
This action is an appeal of the employing board of education's decision terminating the employment of a tenured public school teacher. The appeal is brought pursuant to General Statutes § 10-151 (f). The Defendant Appellee Bristol Board of Education (hereinafter Board) initially voted to terminate the employment of the Plaintiff Appellant Elinor Halpern previously known as Elinor Lee on August 30, 1974. The Board's termination decision was proceeded by a General Statutes § 10-151 (b) termination hearing. The August 30, 1974 termination decision was appealed to the Court of Common Pleas which dismissed Plaintiff's appeal. On June 3, 1980 the Supreme Court reversed the lower court decision and remanded the case with directions to return it to the Board for further proceedings consistent with the Supreme Court opinion. Lee v. Board of Education, 181 Conn. 69, June 3, 1980. Such remand to the Board was ordered by the Superior Court, the successor to the Court of Common Pleas.
The Board on November 12, 1980, acting on the remand, issued "findings and conclusion" based on the record of the 1974 §10-151 (b) termination hearing. This Board decision also was to terminate the tenured continuing teaching contract of the Plaintiff.
Plaintiff appealed the November 12, 1980 decision to the Superior Court (Docket No. CV81-0253483) pursuant to § 10-151
(f). The Superior Court dismissed Plaintiff's Appeal.
Plaintiff appealed the Superior Court decision to the Appellate Court. The appeal was transferred to the Supreme Court pursuant to the Rules of Appellate Practice.
The Connecticut Supreme Court reversed the Superior Court dismissal of Plaintiff's Appeal. On November 8, 1994 the Supreme Court again directed that the case be returned to the Board for further proceedings in accordance with the Supreme Court's more explicit instruction. Halpern v. Board of Education, 231 Conn. 308
(1994). The Superior Court for the Hartford-New Britain Judicial District entered judgment and remanded the case to the Board on January 3, 1995 (R. #8).
Following this remand Judgment the Board and Plaintiff took the following actions. CT Page 8263
A January 4, 1995 letter from Board's attorney to the Board's Superintendent outlining distribution of the transcript and exhibits from Plaintiff's 1974 hearing to current Board members. Copies of the letter went to each Board member outlining their obligation to review the materials from the 1974 hearing (R. #9).
A January 5, 1995 letter from the Board's attorney to the Plaintiff's attorney outlining a procedure intended to comport with the Supreme Court mandate (R. #9).
There is no record of a response by Plaintiff or her attorney to the January 5, 1995 letter; other than in minutes of the January 25th meeting indicating that Plaintiff, through counsel, had requested the January 25th meeting be a public proceeding.
On January 13, 1995 the Board disseminated notice of a special Board meeting to address a personnel matter involving Plaintiff on January 25, 1995 (R. #10).
January 25, 1995. The Board met at a special meeting in public session. Attending the meeting were nine members of the Board, the Board's attorney, the Plaintiff, the Plaintiff's attorney and the Board's Director of Personnel. The minutes in pertinent part describe the purpose of the meeting.
 Attorney Clemow explained that while the purpose of the meeting was to discuss the termination of employment of a former teacher in the Bristol Public Schools, the discussion would be held in public session at the request of Ms. Halpern, as conveyed through her attorney, John L. Schoenhorn. Attorney Clemow also stated that Attorney Schoenhorn had requested that the draft findings contemplated by the Connecticut Supreme Court decision be distributed to his client at the same time they are distributed to all of the members of the Board, so that he is permitted to comment or respond to them before the full Board votes on them. Accordingly, Attorney Clemow suggested that the draft findings be prepared by a single member of the Board, in consultation with counsel, then distributed to Ms. Halpern and the Board. After Ms. Halpern has an opportunity for input as contemplated by the Supreme Court, the full Board can then discuss and CT Page 8264 amend or adopt the draft findings as their final decision.
The minutes also reflect the members of the Board confirming that they had read the transcript and exhibits of the Plaintiff's 1974 termination proceeding. Several members of the Board expressed dissatisfaction with the state of the record, but were instructed by their attorney that they must limit their consideration to the 1974 record. A general discussion of the merits of the case ensued, until the members of the Board had reached a conclusion. The unanimous conclusion was that valid grounds existed for the termination of Plaintiff's employment.
The Board Chairperson agreed to write up proposed findings and conclusions with the assistance of the Board's attorney. The draft proposed findings and conclusion would be circulated to the Board members and Plaintiff at the same time. A further Board meeting would then be scheduled to allow Plaintiff to respond and consider amending or adopting the draft findings and conclusion as the Board's decision (R. #11).
February 24, 1995. The Board's attorney transmitted the draft findings and conclusion to Plaintiff's counsel. Plaintiff was also afforded, until March 17, 1995, to submit "any written argument [she] wished to present." A special meeting of the Board was proposed for the week of March 27, 1995 to allow for Plaintiff's oral argument and Board action (R. #12).
On March 23, 1995, the Board's attorney by Fax notified Plaintiff's attorney of a March 28, 1995 special meeting of the Board on the Plaintiff's case. The letter noted the absence of a written brief by the Plaintiff but welcomed oral argument at the meeting (R. #13).
On March 28, 1995, the Plaintiff through her attorney requested orally and in writing a rescheduling of the Board meeting concerning Plaintiff's case (R. #15).
On April 28, 1995, the Board disseminated a formal notice of a May 8, 1995, 7:00 p.m. meeting to address a personnel matter involving the Plaintiff (R. #17).
The Board met on May 8, 1995, in public session. All nine members of the Board who participated in the January 25, 1995 meeting were present. Also in attendance were the Board's CT Page 8265 attorney, the Plaintiff, Plaintiff's attorney, the Board's Personnel Director and members of the press.
The meeting was not recorded, but the record contains detailed minutes (R. #18). The minutes were conceded to be accurate by Plaintiff's attorney at oral argument and in Plaintiff's brief.
The meeting was not called to order until 7:15 p.m., following an approximately fifteen minute delay, at Plaintiff's request. The delay was for the purpose of allowing plaintiff additional time to consult with her attorney.
Plaintiff's attorney objected to the absence of a stenographer or recording device. The claim was made pursuant to the Teacher Tenure Act General Statutes § 10-151, et seq. The Board's attorney after disputing the nature of the tenure act requirement, indicated that Plaintiff was free to tape record the meeting, and pointed out her opportunity to have submitted a written brief. Following a colloquy by counsel relating to the role of the current Board, the Plaintiff commenced her presentation.
Plaintiff initially went into a dispute with the Board over access to records and was advised that the Board would not consider additional evidence. The Plaintiff also sought to inquire of each Board member his or her reasons for supporting the proposed finding and conclusion. The Chairperson of the Board denied this request and directed Plaintiff to make her argument.
Plaintiff proceeded with a detailed presentation, responding to the proposed finding and conclusion (R. #18, pp. 2-3). The meeting was recessed between 8:50 p.m. and 9:05 p.m. When the meeting was reconvened the Chairperson of the Board indicated that in absence of any agreement on a reasonable time limit the meeting would end at 10 p.m. Plaintiff's attorney objected and argued that Plaintiff should be given as long as she wished, with additional meeting dates if necessary.
Plaintiff continued her detailed presentation until interrupted by the Board Chairperson at 10:00 p.m. Plaintiff asked for a short time to finish her point and this was permitted. The Plaintiff's request for an additional hour to finish her entire presentation was denied. CT Page 8266
The Chairperson of the Board inquired if any member of the Board wished to comment about the proposed findings and conclusion or to address any points raised by Plaintiff. No Board member responded.
A Board member proposed the adoption of the proposed findings and conclusion. The Board then voted unanimously to adopt the proposed findings and conclusion and terminate Plaintiff's employment. The Board meeting was then adjourned at 10:15 p.m.
It is from this vote that the Plaintiff has appealed pursuant to § 10-151 (f).
In her brief Plaintiff claims that the Board's May 8, 1995 decision violates her constitutional rights to due process of law, her rights under General Statutes § 10-151, and the mandate of the Connecticut Supreme Court. The violations alleged were allegedly occasioned by the absence of a verbatim record of the May 8, 1995 meeting, the restrictions on her presentation at such meeting and the failure of the record to support the "Findings and Conclusion."
Plaintiff's brief also claims that the Board's termination decision was arbitrary, capricious, illegal, biased, an abuse of discretion and in bad faith. The other issues raised in the appeal but not briefed are viewed as abandoned. Collins v.Goldberg, 28 Conn. App. 733, 738 (1992).
In evaluating Plaintiff's claims this court must review the Supreme Court decisions which directly address this case, in order to evaluate what the Board was obligated to do after the most recent remand (January 3, 1995, Superior Court Judgment R. #8).
In its first review in 1980 the Supreme Court addressed two claims of the Plaintiff. One claim about the validity of the Board's August 30, 1974 meeting was rejected. Thus, the Court decided the case on one issue: "On Appeal, the plaintiff claims that the trial court erred . . . (1) in concluding that the Board's failure to state the reasons for its decision or the evidence upon which it relied did not deprive the plaintiff of due process of law . . . ." Lee v. Board of Education, 181 Conn. 69,71. Further noting: "The plaintiff does not challenge the sufficiency of the notice and hearing requirements of General Statutes § 10-151 (b). The record discloses that the CT Page 8267 plaintiff was afforded adequate notice of the charges made and that the hearing held pursuant to § 10-151 (b), at which the plaintiff was represented by counsel, presented evidence and cross-examined witnesses, complied with the constitutional safeguards. Her single claim in this regard is that the Board's failure to state the reasons for its decision and the evidence upon which it relied deprived her of due process of law."181 Conn. at 76-77.
The Supreme Court in Lee went on to hold: "Those decisions, and their rationale, lead us to the conclusion that a tenured teacher discharged for cause under General Statutes § 10-151
(b) is entitled, as a matter of constitutional law, to a written statement of the decision reached, the reasons for the determination, and a fair summary of the evidence relied upon."181 Conn. at 79.
In language which is particularly instructive to this court the Lee decision notes: "Our conclusion is also based upon General Statutes § 10-151 (f), which grants a teacher aggrieved by the Board's decision the right to judicial review in the Superior Court. On appeal, the court must determine whether the appropriate procedure under the statute and the state and federal constitutions was employed, and whether the evidence relied upon was reliable and substantial and, if believed, sufficient to establish cause under the statute." (Citation omitted.) 181 Conn. at 81.
In its decision in Halpern v. Board of Education, 231 Conn. 308,310 (1994), the court determined that: "The dispositive issue in this administrative appeal is the scope of our mandate `for further proceedings consistent with (our) opinion' in Lee v.Board of Education, 181 Conn. 69, 84, 434 A.2d 333 (1980)."
The issues and disposition in Halpern are enunciated at231 Conn. 308, 311:
 The gravamen of the plaintiff's present appeal is that the members of the board that reconsidered her termination in 1980 could not validly conduct the "further proceedings" ordered by this court because none of them had been a member of the board at the time of the original termination proceedings in 1974. The plaintiff maintains that the actions of the newly CT Page 8268 constituted board in making its determination on the prior record, without conducting an entirely new hearing, violated: (1) her statutory rights; (2) her constitutional rights; and (3) the mandate of our remand order. Although we disagree that a new hearing is required, we agree that the special circumstances of this case warrant a more expansive interpretation of our mandate than it received from the board or from the trial court." (Footnote omitted.)
The express mandate is set forth at 231 Conn. 314-315:
 To eliminate any ambiguity in our present order of remand, we direct the trial court to set aside its judgment and to remand the case to the board to determine whether there are grounds for the plaintiff's termination and to specify the evidence that supports its determination. In order to provide the plaintiff with a voice in these proceedings, we direct the board to adopt, by analogy, the procedure specified by the Uniform Administrative Procedure Act in General Statutes § 4-179. (Footnote omitted.) That section requires, in somewhat comparable circumstances, the preparation of a "proposed final decision" and affords to interested parties the opportunity to comment on that proposal by filing exceptions and presenting briefs and oral argument to the officials who are to render the decision. We have held that the opportunity to respond to a "proposed final decision" is a constitutionally adequate safeguard of the due process rights of the parties whose interests are being adjudicated in a contested case. Pet v. Dept. of Health Services, 228 Conn. 651, 672, 638 A.2d 6 (1994). The board is therefore directed in this case to prepare such a "proposed final decision," and thereafter to afford the plaintiff and other interested parties the opportunity for appropriate responses thereto, including the right to file exceptions and to present briefs and oral argument to the board. After due consideration of these responses, the board is then authorized to adopt a final decision including the requisite findings CT Page 8269 concerning the propriety of the termination of the plaintiff's tenure as a teacher in 1974.
The court having reviewed the history of the case and the Supreme Court mandate will now review Plaintiff's claims.
The Board argued that Plaintiff has waived her right to challenge the sufficiency of evidence supporting her termination. The Board cited the footnote in Halpern at 231 Conn. 311 footnote 2: "The Plaintiff has not challenged the conclusion of the trial court that the evidence adduced at her termination hearing was sufficient to support the findings of the board." Nevertheless, we are now addressing new "findings" and a new "conclusion." The findings and conclusion of record in Halpern, supra, were improperly reached in violation of Plaintiff's constitutional due process rights. Halpern, supra, 231 Conn. 313.
The Supreme Court made clear in Lee, supra, that one of the specific reasons for requiring findings (a statement of reasons and evidence relied upon) was because under a § 10-151 (f) appeal "the court must determine . . . whether the evidence relied upon was reliable and substantial and, if believed, sufficient to establish cause under the statute."181 Conn. at 81.
The Board on May 8, 1996, having independently reviewed the record of the 1974 termination hearing, adopted findings and a conclusion terminating Plaintiff's employment. The Teacher Tenure Act clearly affords Plaintiff the opportunity, however belatedly, to have a court review the merits of that decision. This appeal presents the first opportunity to review findings and a conclusion which were reached pursuant to a procedure which was not violative of Plaintiff's constitutional rights or the Connecticut Supreme Court mandate.
An analysis of Plaintiff's bias claim is also assisted by the court's consideration of the record upon which the Board acted on the merits.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that CT Page 8270 substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, Plaintiff must demonstrate that she suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v. Department ofHealth Services, 220 Conn. 86, 94 (1991).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57-58 (1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v. Commission on Hospitals Health Care, 182 Conn. 314, 318 (1980).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotation marks omitted.) Board of Education v. Freedom of InformationCommission, 208 Conn. 442, 452 (1988).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service, Inc. v.Administrator, Unemployment Compensation Act, 209 Conn. 381, 385
CT Page 8271 (1988).
Exhibit H of the record contains a detailed chronology of a major portion of the 1973-74 school year from September 10, 1973 through March 29, 1974. It includes twenty-three days when Plaintiff was late for work; three incidents when Plaintiff, during the course of the school day, left her students unsupervised; two occasions when Plaintiff failed to pick up her students from special classes; eight instances of Plaintiff being either late or absent from assigned supervisory duties; and five times when Plaintiff missed or was late for special classes. Exhibit H also documents ongoing disputes about Plaintiff's keeping first grade students after school, assigning excessive class work and homework, denying lunch and recess breaks to students and parental complaints about Plaintiff's performance.
At the hearing in 1974 the principal of the school where Plaintiff taught, substantiated on his personal knowledge a clear majority of the events listed in Exhibit H (R. #1, p. 25).
The Plaintiff was repeatedly orally and in writing directed to follow specific directives relating to reporting to work on time, dismissing classes on time, not assigning mandated homework and not leaving her class unattended (R. #1, pp. 33-34, 40-41, Exhibits A, C, D, and E). Exhibit H and Principal Kerr's testimony provided evidence of a failure to comply with these directives.
The Plaintiff at the hearing denied some, but not all of the alleged deficiencies in her performance.
 Q. Mrs. Lee, you have concluded, and we all accept the fact that you . . . just can't get to work on time, is that correct? Is that a fair statement?
 A. It is not an every day occurrence, but during the course of the year I am late.
 Q. It is not like once or twice a month, it is more like once or twice a week?
A. I would say once a week.
R. Exhibit 1 Transcript pp. 157-158: CT Page 8272
Also, at pp. 164, 166 and 170 Plaintiff acknowledged failing to meet her obligations and willfully refusing to follow directions.
The Board's "Finding of Fact" (set forth in R. #19, pp. 2-3) are substantiated by reliable and probative evidence in the record.
The critical conclusions of the Board are:
 The Board concludes that Ms. Lee's chronic failure to report to work on time, as well as her repeated failure to perform supervisory duties as scheduled or get students to special classes as scheduled, continued with such frequency and over such a period of time as to constitute inefficiency or incompetence. The Board also concludes that Ms. Lee's failure to stop assigning homework to her first grade students, and especially her failure to heed administrative directives to dismiss children at 3:00 p.m., were sufficiently significant and serious to constitute insubordination." (R. #19, p. 5.)
The Teacher Tenure Act, § 10-151, sets forth the grounds upon which the termination of a tenured teacher's employment may be terminated.
Section 10-151 (d)(1) specifically includes "Inefficiency or incompetence," as a ground for termination.
The documented evidence of repeated and admitted tardiness, combined with a record of failure to cover assignments, suffice to substantiate a conclusion of inefficiency and/or incompetence. Plaintiff's repeated failure to arrive on time for supervisory duties, such as recess, presented safety problems. Her tardiness and forgetfulness with respect to special classes disrupted the schedules of other teachers and deprived students of educational opportunities offered by the school. No matter how skilled a teacher may be, a continuous failure to report on time and cover assignments constitute inefficiency and/or incompetence.
The Board's conclusion as to insubordination is offered not under § 10-151 (d)(2), insubordination against reasonable CT Page 8273 rules of the board of education; but rather § 10-151 (d)(6) other due and sufficient cause.
The Board relies on Tucker v. Norfolk Board of Education,177 Conn. 572, 577 (1979) for the proposition that insubordination may constitute "other due and sufficient cause" for the termination of a tenured teacher.
The record reflects the Plaintiff's repeated and willful refusal to follow the directives of her administrative superiors. It is unquestionably insubordinate conduct. The pattern and continuation of such conduct also substantiate the conclusion that it was of a serious enough nature to justify a termination of the employment of a tenured teacher.
 The board contends that insubordination in and of itself constitutes "other due and sufficient cause" for the termination of the Plaintiff's contract and is a valid statutory basis for dismissal under the provisions of § 10-151
(b)(6). We agree with the board's contention.
Tucker, supra, 177 Conn. 577.
The Plaintiff in her brief challenges the proposed findings and conclusions as not meeting due process of law standards. Plaintiff claims that the proposed findings and conclusions were not specific enough for her to respond to.
In Lee, supra, 181 Conn. 80, the Supreme Court noted: "The statement of reasons and a fair summary of the evidence relied upon need not reflect the polish of a judicial opinion. Reasoned and fair decision making, not technical finesse, is guaranteed by the due process standards of the state and federal constitutions."
The Proposed Findings and Conclusions (R. #12) are five pages in length, contain thirteen specific findings, and include a weighing and assessment of the evidence. The record also indicates that Plaintiff and her attorney were present on January 25, 1996, when the Board discussed the evidence and considered a conclusion. The Proposed Findings and Conclusions meet the constitutional due process requirements for administrative agencies. CT Page 8274
The Plaintiff's claims respecting her opportunity for input on the "Proposed Findings and Conclusion" are essentially twofold. One aspect is the denial of the opportunity to present additional evidence and the other claim relates to the time limitation on oral argument.
The Plaintiff was not entitled constitutionally, under §10-151 or under the Supreme Court mandate, to present further evidence in response to the "Proposed Findings and Conclusion." In the initial Supreme Court decision it was determined that Plaintiff was given a constitutional and statutorily adequate hearing in 1974. "The record discloses that the Plaintiff was afforded adequate notice of the charges made and that the hearing held pursuant to § 10-151 (b), at which the plaintiff was represented by counsel, presented evidence and cross-examined witnesses, complied with the constitutional safeguards." Lee,
supra, 181 Conn. 76. The sole defect was the Board's failure to state the reasons for its decision and the evidence upon which it relied. Lee, supra, 181 Conn. 79.
The remands in both the Lee and Halpern decisions clearly did not contemplate further evidentiary proceedings. Halpern
expressly addressed this claim:
 Applying these principles to the circumstances of this case, we are persuaded that the Plaintiff cannot prevail on her claim that she is entitled, as a matter of statutory right, to a new termination hearing. In our prior decision, we concluded that Plaintiff's statutory rights had not been violated. Lee v. Board of Education,
supra, 181 Conn. 76-77. Accordingly, our mandate for further proceedings did not direct a new hearing under the statute.
231 Conn. 312.
The Supreme Court explicit mandate as previously noted in this decision affords Plaintiff the opportunity to have "a voice in the proceedings" through a process that would allow her to "comment on that proposal by filing exceptions and presenting briefs and oral argument to the officials who are to render the decision." Halpern, supra, 231 Conn. 314.
The Plaintiff did not have any right to examine the Board CT Page 8275 members individually, introduce additional evidence or enter into discovery proposals.
The Plaintiff was afforded in excess of two hours of oral argument. She declined opportunities to file a written brief or to propose an alternate procedure. She was specifically advised at approximately 9:05 p.m. that she needed to conclude her presentation by 10 p.m. At 10 p.m. she was afforded an additional "minute or so" to conclude a point.
Plaintiff was afforded a voice in the proceedings and given ample opportunity to comment on the proposed findings and conclusion by written brief and/or oral argument. Plaintiff chose not to file written briefs and elected to argue herself rather than through her experienced attorney.
Due process requires fair proceedings not perfect or exhaustive proceedings. State v. Daugaard, 231 Conn. 195, 218
(1994), cert. denied, 115 S.Ct. 770 (1995). To afford the Plaintiff unlimited time to argue as her attorney originally proposed (R. #18) is an absurd claim. To deny an additional hour of argument after hearing in excess of two hours of argument is a reasonable action by the Board. "An administrative hearing does not have to match the mold of a trial in court. It must, however, meet some modicum of orderly and fair procedure." (Citation omitted.) Zanavich v. Board of Education, 8 Conn. App. 508, 512
(1986).
In analyzing Plaintiff's arguments the court has considered the facts as represented in the record not the factual misrepresentations contained in Plaintiff's brief. The Plaintiff "Preliminary Brief," dated November 17, 1995; asserts that: "The defendant board offered the Plaintiff the options of submitting objections in writing or appearing at a hearing to present rebuttal. The Plaintiff chose the latter." At oral argument Plaintiff's counsel conceded that Plaintiff was free to comment both in writing and orally (R. #12). Plaintiff asserts at page 5 of her brief that she was peremptorily cut off in her oral argument. In fact, after presenting over an hour of oral argument, she was afforded at least forty-five minutes to conclude her argument, and afforded the courtesy of an extra few minutes to conclude a point.
Pet v. Department of Health Services, 228 Conn. 651, 662-63
(1994) dealt with the imposition of a time limit on cross CT Page 8276 examination. The context of the time limit was dispositive in determining that it was not inappropriate.
Plaintiff's failure to take advantage of the fair opportunity to respond in writing is related to the time necessary to allow a fair oral argument. Similarly, Plaintiff's election to reserve to the May 8, 1995 hearing her concerns about the specificity of the findings undermines her objections.
The Board's communications to Plaintiff concerning the procedure to be followed on remand (R. #9) express an openness to suggestions and input by Plaintiff. The record is devoid of any comment from Plaintiff until the literal eleventh hour (R. #18). This pattern suggests the Plaintiff's concerns as being procedural as opposed to substantive. It is certainly long past the time for any substantive issues relating to the termination to be aired and finally resolved.
Section 10-151 (f) provides that in the event of a tenured teacher termination appeal: "The board of education shall file with the court a copy of the complete transcript of the proceedings of the hearings held by the board of education or by an impartial hearing panel for such teacher . . . as shall constitute the record of the case."
The May 8, 1995 oral argument, discussion and vote were not transcribed. Plaintiff objected to the lack of a verbatim record at such hearing (R. #18).
Defendant argues that the statute refers to the evidentiary portion of such proceedings not oral argument and Board discussion. This construction is supported by a consideration of the teacher termination procedure outlined in § 10-151 (d). Termination hearings may be before a board of education subcommittee, impartial hearing panel or a single impartial hearing officer. The panel chosen holds an evidentiary hearing and makes findings and a recommendation to the board of education: "shall submit written findings and a recommendation to the board of education as to the disposition of the charges against the teacher . . . The board of education shall give the teacher concerned its written decision within fifteen days of receipt of the written recommendation of the impartial hearing panel, subcommittee or hearing officer." Thus, the statute contemplates an evidentiary hearing before a panel which will make factual findings and recommendations to the full board of CT Page 8277 education, which will decide the case, see Catino v. Board ofEducation, 174 Conn. 414 (1978). The court interprets the reference in § 10-151 (f) to "complete transcript of the hearing held by the board of education or by an impartial hearing panel" to relate back to the Board subcommittee or panel which heard the evidence in the case.
Plaintiff fails to provide any basis for the court to conclude the failure to provide a transcript of the May 8, 1995 proceeding in any way prejudiced her. Detailed minutes of the May 8, 1995 meeting are in the record (Exhibit #18). Plaintiff's counsel, at oral argument, acknowledged the accuracy of these minutes. A transcript would only have reflected the Plaintiff's verbatim oral argument. There was no Board discussion. The Plaintiff on appeal must show not only a technical error, but that there is some resulting harm to her from such error. Pet v.Department of Health Services, supra, 228 Conn. 663. The failure to record the proceedings of May 8th did not adversely impact the Plaintiff's substantive rights under § 10-151 or the state and federal constitutions.
Additionally, Plaintiff was offered the opportunity to record the proceedings herself; and made no effort to do so, or request a continuance to make arrangements to do so. "In administrative appeals, we have held that the failure to utilize a remedy available to cure a defect deprives a complainant of the right to reject to the alleged defect." Pet v. Department of MentalHealth, supra, 228 Conn. 664; Dragon v. Connecticut MedicalExamining Board, 223 Conn. 618, 631 (1992); Jutkowitz v.Department of Health Services, supra, 220 Conn. 95-96.
Plaintiff's claim of bias is not supported by evidence of a disqualifying interest in the case. "It is presumed that members of administrative boards acting in an adjudicative capacity are unbiased." Jutkowitz v. Department of Health Services, supra,220 Conn. 100. Also see Petrowski v. Norwich Free Academy, 199 Conn. 231,236, appeal dismissed 479 U.S. 802 (1986), involving a challenge to board of education members in a teacher termination case. The party who contends that an adjudicator is biased bears the burden of proving the disqualifying interest. Clishman v.Board of Police Commissioners, 223 Conn. 354, 361 (1992).
The claim of bias is allegedly evidenced by the failure of the Board to discuss the findings after Plaintiff's oral argument on May 8, 1995. The Board had received the record of the 1974 CT Page 8278 hearing by January 4, 1995 transmittal (R. #9). All Board members had reviewed the materials prior to discussing them in public session on January 25, 1995 (R. #17). Proposed findings and a recommendation had been available since February 24, 1995. Plaintiff had declined to comment in writing on the proposed findings and recommendation.
The court cannot conclude from the record that the Board acted improperly when it declined the opportunity to discuss or amend its proposed findings and recommendation following Plaintiff's oral argument.
CONCLUSION
For the reasons set forth above, the court finds no violation of Plaintiff's rights.
Plaintiff's Appeal is dismissed.
Robert F. McWeeny, J.